‖▌▌▌▌▌ ▌▌▌▌ ▌▌▌▌ ▌▌▌▌ ▌▌▌▌ ▌▌▌▌ ▌▌▌ ▌▌▌ ▌▌▌▌

‖▌▌▌▌▌ ▌▌ ▌▌▌▌▌ ▌▌▌▌▌ ▌▌▌▌ ▌▌ ▌▌▌▌

**07-CV-00039-CMP**

FILED _____ ENTERED _____
LODGED _____ RECEIVED _____

JAN 0 7 2007

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOME TECHNOLOGIES BELLEVUE LLC,

Plaintiff,

v.

LG PHILIPS LCD CO., LTD.; LG PHILIPS LCD
AMERICA, INC.; SAMSUNG ELECTRONICS
CO. LTD.; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; TOSHIBA
CORPORATION; TOSHIBA MATSUSHITA
DISPLAY TECHNOLOGY CO., LTD;
HITACHI LTD.; HITACHI DISPLAYS, LTD.;
HITACHI AMERICA LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.; SANYO
EPSON IMAGING DEVICES CORPORATION;
NEC CORPORATION; NEC LCD
TECHNOLOGIES, LTD.; NEC ELECTRONICS
AMERICA, INC.; IDT INTERNATIONAL
LTD.; INTERNATIONAL DISPLAY
TECHNOLOGY CO., LTD.; INTERNATIONAL
DISPLAY TECHNOLOGY USA INC.; AU
OPTRONICS; AU OPTRONICS
CORPORATION AMERICA; CHI MEI
OPTOELECTRONICS CORPORATION; CHI
MEI OPTOELECTRONICS USA, INC.;
CHUNGHWA PICTURE TUBES LTD.; AND
HANNSTAR DISPLAY CORPORATION,

Defendants.

C 07-0039 JLR

No.

CLASS ACTION COMPLAINT

CLASS ACTION COMPLAINT - 1
Case No.

001942-11 147610 V1

**ORIGINAL**

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ▪ SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ▪ FACSIMILE (206) 623-0594

1   Plaintiff, by its attorneys, brings this civil action for damages and injunctive relief on

2   behalf of itself and all others similarly situated against the above-named Defendants complain

3   and allege as follows:

4   **I.     JURISDICTION AND VENUE**

5   1.   This complaint is filed under Section 16 of the Clayton Act (15 U.S.C. § 26) to

6   obtain injunctive-relief for violations of Section 1 of the Sherman Act (15 U.S.C. § 1), to recover

7   damages under federal antitrust laws, and to recover the costs of suit, including reasonable

8   attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result

9   of the Defendants' violations of those laws.

10   2.   The Court has jurisdiction over the federal claim under 28 U. S. C. §§ 1331, 1337

11   and 1367.

12   3.   Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391

13   because Defendants reside, transact business, or are found within this District, and a substantial

14   part of the events giving rise to the claims arose in this District.

15   4.   The activities of the Defendants and their co-conspirators, as described herein,

16   were within the flow of, were intended to, and did have a substantial effect on the foreign and

17   interstate commerce of the United States.

18   **II.     DEFINITIONS**

19   5.   As used herein, the term "TFT-LCD Products" means Thin Film Transistor

20   Liquid Crystal Display products, including such products as are used in televisions, computer

21   (both desktop and notebook) monitors, mobile phones, personal digital assistants ("PDA's") and

22   other devices.

23   6.   As used herein, the term "Class Period" means the time period extending from at

24   least January 1, 1998 through at least December 31, 2005.

25

26

CLASS ACTION COMPLAINT - 2
Case No.

001942-11 147610 V1

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

### III.    PARTIES

**A.    Plaintiff**

7.    Plaintiff Home Technologies Bellevue LLC, purchased TFT-LCD Panels from one or more of the Defendants during the Class Period and was injured as a result of Defendants' illegal conduct.

**B.    Defendants**

8.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea. LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD. LG Philips maintains offices in San Jose, California. In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." (http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp). During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.    Defendant LG Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located at 150 East Brokaw Rd., San Jose, CA 95112. During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10.    Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, Samsung

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ▪ SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ▪ FACSIMILE (206) 623-0594

1  manufactured, sold and distributed TFT-LCD Products to customers throughout the United

2  States.

3      11.    Defendant Sharp Corporation is a business entity organized under the laws of

4  Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522,

5  Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-

6  LCD Products to customers throughout the United States.

7      12.    Defendant Sharp Electronics Corporation is a wholly owned and controlled

8  subsidiary of Sharp Corporation, with its principal place of business at 1 Sharp Plaza, Mahwah,

9  New Jersey  07430. During the Class Period, Sharp Electronics Corporation manufactured, sold

10  and distributed TFT-LCD Products to customers throughout the United States.  Sharp

11  Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

12      13.    Defendant Toshiba Corporation is a business entity organized under the laws of

13  Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-

14  8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and distributed

15  TFT-LCD Products to customers throughout the United States.

16      14.    Defendant Toshiba Matsushita Display Technology Co., Ltd; is a business entity

17  organized under the laws of Japan with its principal place of business located at Rivage

18  Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Defendant Toshiba

19  Corporation states on its website the following regarding Toshiba Matsushita Technology Co.,

20  Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and

21  production and enhanced sales operations with a truly worldwide reach.  The company is the

22  undisputed leader in low temperature polysilicon TFT technology, the preferred display for

23  mobile devices and the underpinning technology for organic LED, the next generation display-

24  of-choice for a range of products, including thin profile televisions.  These leading-edge

25  capabilities support us in providing high value added displays that are light and thin, consume

26  little power and offer excellent image quality."

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  (http://www.toshiba.co.jp/worldwide/about/company/tmd.htm). During the Class Period,

2  Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD

3  Products to customers throughout the United States.

4      15.    Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are

5  referred to collectively herein as "Toshiba."

6      16.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan,

7  with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo

8  100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and distributed TFT-

9  LCD Products to customers throughout the United States.

10     17.    Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of

11 Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,

12 Chiyoda-ku, Tokyo, 101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e

13 provide the world's best products, quality and service to meet the needs of the digital age. These

14 include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle;

15 large-sized LCD modules for TVs using our original moving picture technology; small-sized

16 LCD modules for information terminal devices such as cellular phones and digital cameras with

17 low power consumption and high resolution picture realized by LTPS (low-temperature poly-

18 silicon) technology; and middle-sized colorful LCD modules for amusement devices. We also

19 produce components such as LCD drivers, color filters and back-lights." (http://www.hitachi-

20 displays.com/en/company/ work/index.html). During the Class Period, Hitachi Displays, Ltd.

21 manufactured, sold and distributed TFT-LCD Products to customers throughout the United

22 States.

23     18.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of

24 Defendant Hitachi Ltd. Hitachi America Ltd. is a business entity organized under the laws of

25 New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    10591. During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-

2    LCD Products to customers throughout the United States.

3        19.    Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and

4    controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place

5    of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the Class

6    Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD

7    Products to customers throughout the United States.

8        20.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi

9    Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

10       21.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is "a joint

11   venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations in October,

12   2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo

13   Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and

14   mobilizes each company's special fields of miniaturization, high resolution, high definition, and

15   volume production technology." (http://www.sanyo-epson.com/e/ company/outline/index.html).

16   Defendant Sanyo Epson's principal place of business is located at World Trade Center Building

17   15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan. During the Class Period, Sanyo Epson

18   manufactured, sold and distributed TFT-LCD Products to customers throughout the United

19   States.

20       22.    Defendant NEC Corporation is a business entity organized under the laws of

21   Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-

22   8001, Japan. During the Class Period, NEC Corporation manufactured, sold and distributed

23   TFT-LCD Products to customers throughout the United States.

24       23.    Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled

25   subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan

26   with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki,

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    Kanagawa 211-8666, Japan.  During the Class Period, NEC LCD Technologies, Ltd.

2    manufactured, sold and distributed TFT-LCD Products to customers throughout the United

3    States.

4        24.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and

5    controlled subsidiary of NEC Corporation, with its principal place of business at 2880 Scott

6    Boulevard, Santa Clara, California  95050 and its manufacturing plant in Roseville, California.

7    During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products to

8    customers throughout the United States.

9        25.    Defendant IDT International Ltd. is an entity organized under the laws of

10   Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase

11   1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong.  During the Class Period, IDT

12   International Ltd. manufactured, sold and distributed TFT-LCD Products to customers

13   throughout the United States.

14       26.    Defendant International Display Technology Co., Ltd. is an entity organized

15   under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-

16   2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan.  Defendant International Display Technology

17   Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation.  During the Class

18   Period, Defendant International Display Technology Co., Ltd. manufactured, sold, and

19   distributed TFT-LCD Products to customers throughout the United States.

20       27.    Defendant International Display Technology USA Inc. is corporation with its

21   principal place of business located at 101 Metro Drive, Suite 510, San Jose, California 95110.

22   Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei

23   Optoelectronics Corporation.  During the Class Period, Defendant International Display

24   Technology USA Inc. manufactured, sold, and distributed TFT-LCD Products to customers

25   throughout the United States.

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    28.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products

2    and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu

3    30078, Taiwan, R.O.C.  During the Class Period, AU Optronics manufactured, sold and

4    distributed TFT-LCD Products to customers throughout the United States.

5    29.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned

6    and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720

7    Cypresswood Drive, Suite 241, Houston, Texas  77070.  AUOCA has a facility located in San

8    Diego, California.  During the Class Period, AUOCA manufactured, sold and distributed TFT-

9    LCD Products to customers throughout the United States.

10    30.    Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading

11    manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi

12    Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan, R.O.C.

13    During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to

14    customers throughout the United States.

15    31.    Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled

16    subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive, Suite 510, San

17    Jose, California  95110.  During the Class Period, Chi Mei Optoelectronics USA, Inc.

18    manufactured, sold and distributed TFT-LCD Products to customers throughout the United

19    States.

20    32.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading manufacturer

21    of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan,

22    Taiwan, R.O.C.  During the Class Period, Chunghwa manufactured, sold and distributed TFT-

23    LCD Products to customers throughout the United States.

24    33.    Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer

25    of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu

26

CLASS ACTION COMPLAINT  - 8
Case No.

001942-11  147610 V1

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623 7292 • FACSIMILE (206) 623 0594

1  Chiu, Taipei 114, Taiwan, R.O.C.  During the Class Period, HannStar manufactured, sold and

2  distributed TFT-LCD Products to customers throughout the United States.

3  **C.    Co-Conspirators**

4      34.    Various others, presently unknown to Plaintiff, participated as co-conspirators

5  with the Defendants in the violations of law alleged in this Complaint and have engaged in

6  conduct and made statements in furtherance thereof.

7      35.    The acts charged in this Complaint have been done by Defendants and their co-

8  conspirators, or were authorized, ordered or done by their respective officers, agents, employees

9  or representatives while actively engaged in the management of each Defendant's business or

10  affairs.

11     36.    Each of the Defendants named herein acted as the agent or joint venturer of or for

12  the other Defendants with respect to the acts, violations and common course of conduct alleged

13  herein.

14              **IV.    CLASS ACTION ALLEGATIONS**

15     37.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of

16  the Federal Rules of Civil Procedure, on behalf of itself and a Plaintiff Class ("the Class")

17  composed of and defined as follows:

18          All persons and entities residing in the United States who, from
            January 1, 1998 through December 31, 2005, purchased TFT-LCD
19          Products in the United States directly from the Defendants for their
            own use and not for resale.  Specifically excluded from this Class
20          are the Defendants; the officers, directors or employees of any
            Defendant; any entity in which any Defendant has a controlling
21          interest; and any affiliate, legal representative, heir or assign of any
            Defendant.  Also excluded are any federal, state or local
22          governmental entities, any judicial officer presiding over this
            action and the members of his/her immediate family and judicial
23          staff, and any juror assigned to this action.

24     38.    This action has been brought and may be properly maintained as a class action

25  pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

001942-11  147610 V1

1            a.     The Class is ascertainable and there is a well-defined community of

2    interest among the members of the Class;

3            b.     Based upon the nature of the trade and commerce involved and the

4    number of indirect purchasers of TFT-LCD Products, Plaintiff believes that the members of the

5    Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class

6    members is not practicable;

7            c.     Plaintiff's claims are typical of the claims of the members of the Class

8    because Plaintiff indirectly purchased TFT-LCD Products from one or more of the Defendants or

9    their co-conspirators, and therefore Plaintiff's claims arise from the same common course of

10    conduct giving rise to the claims of the members of the Class and the relief sought is common to

11    the Class;

12            d.     The following common questions of law or fact, among others, exist as to

13    the members of the Class: whether Defendants formed and operated a combination or

14    conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, TFT-LCD

15    Products;

16                  i.     whether the combination or conspiracy caused TFT-LCD Products

17                        prices to be higher than they would have been in the absence of

18                        Defendants' conduct;

19                 ii.     the operative time period of Defendants' combination or

20                        conspiracy;

21                 iii.     whether Defendants' conduct caused injury to the business or

22                        property of Plaintiff and the members of the Class;

23                 iv.     the appropriate measure of the amount of damages suffered by the

24                        Class;

25                 v.     whether Defendants' conduct violates Section 1 of the Sherman

26                        Act; and

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1                 vi.     the appropriate nature of class-wide equitable relief.

2          e.     These and other questions of law or fact which are common to the

3 members of the Class predominate over any questions affecting only individual members of the

4 Class;

5          f.     After determination of the predominate common issues identified above, if

6 necessary or appropriate, the Class can be divided into logical and manageable subclasses;

7          g.     Plaintiff will fairly and adequately protect the interests of the Class in that

8 Plaintiff has no interests that are antagonistic to other members of the Class and has retained

9 counsel competent and experienced in the prosecution of class actions and antitrust litigation to

10 represent itself and the Class;

11          h.     A class action is superior to other available methods for the fair and

12 efficient adjudication of this litigation since individual joinder of all damaged Class members is

13 impractical. The damages suffered by individual Class members are relatively small, given the

14 expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

15 absent the availability of class action procedures, it would not be feasible for Class members to

16 redress the wrongs done to them. Even if the Class members could afford individual litigation,

17 the court system could not. Further, individual litigation presents the potential for inconsistent or

18 contradictory judgments and would greatly magnify the delay and expense to all parties and to

19 the court system. Therefore, the class action device presents far fewer case management

20 difficulties and will provide the benefits of unitary adjudication, economy of scale and

21 comprehensive supervision by a single court;

22          i.     Defendants have acted, and refused to act, on grounds generally applicable

23 to the Class, thereby making appropriate final injunctive relief with respect to the Class as a

24 whole; and

25          j.     In the absence of a class action, Defendants would be unjustly enriched

26 because they would be able to retain the benefits and fruits of their wrongful conduct.

CLASS ACTION COMPLAINT - 11
Case No.

001942-11 147610 V1

**HB**
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## V.    NATURE OF TRADE AND COMMERCE

39.    Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling TFT-LCD Products throughout the United States.

40.    As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted."  (http://www/lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp).  LG Philips further states that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control liquid crystals. . . . This circuit plays a vital role in controlling each pixel, the basic unit of a picture image.  The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate."  *Id.*

41.    At the portion of its website entitled "How TFT-LCD Works" Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green, and blue.  The number of pixels arranged in a display determines the resolution of the TFT-LCD.  TFT is composed of the data line (image signal transfer) and gate line (TFT on/off signal transfer).  TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals.  Such a change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer.  Consequently, the TFT ~LCD display shows picture image information.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp).

42.    The company describes some of the applications for. TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would have not been possible with cathoderay tubes (CRT).  The flat and thin attributes of LCDs makes them ideal for mobile or portable applications.  In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure.  Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors.  Through innovation, TFT-LCD engineers were able to



develop displays providing much higher resolution than CRTs, in addition to producing them in larger sizes.

Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/ tech210_02_j_e.jsp).

43.    The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, while flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company DisplaySearch." (http://www.theage.com.au/news/home-theatre/they-are-building-it-but-will-lcd-sales-come/2006/10/09/1160246068541.html).

44.    The market for the manufacture and sale of TFT-LCD Products is also conducive to the type of collusive activity alleged here. That market is oligopolistic in nature. According to data from iSuppli, in 2005, LG Philips had 21.4%, of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5 %, Chi Mei had 11.8 %, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%. (http://www.eetimes.com/showArticle.jhtml?articleID=177101936). Samsung took over the leading position in the industry in 2006. (http://biz.yahoo.com/rb/061211/lgphilips_investigation.html?.v=2).

45.    Some of these companies are known antitrust violators. Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October, 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under

CLASS ACTION COMPLAINT - 13
Case No.

001942-11 147610 V1

**HB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static

2    Random Access Memory.

3        46.    The industry is also marked by a web of cross-licensing agreements that facilitate

4    collusion. AU Optronics, for example, entered into licensing arrangements with Sharp in 2005

5    and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics,

6    Chunghwa, HannStar and Hitachi.

7        47.    The market for the manufacture and sale of TFT-LCD Products is subject to high

8    manufacturing and technological barriers to entry, some of which are described in Samsung's

9    own November 3, 2005 "Market Perspective & Strategy" presentation available at its website.

10   (http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelations/IRE

11   ventsPresentations/AnalystDay/index.htm). Efficient fabrication plants are large and costly.

12   TFT-LCD Products are also subject to technological advances, so that firms within the industry

13   must undertake significant research and development expenses.

14       48.    The TFT-LCD Products industry has also been subject to significant consolidation

15   during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the

16   creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac

17   Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

18       49.    Defendants sell their TFT-LCD Products through various channels including to

19   manufacturers of electronic products and devices, and to resellers of TFT-LCD Products. These

20   electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to

21   consumers and are not altered during the course of sale.

22                      **VI.    DEFENDANTS' ILLEGAL CONDUCT**

23       50.    Defendants and their co-conspirators have engaged in a contract, combination,

24   trust or conspiracy, the effect of which was to raise the prices at which they sold TFT-LCD

25   Products to artificially inflated levels from at least January 1, 1998 through at least December 31,

26   2005.

**FB**

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

51. Very recently, antitrust enforcement authorities in multiple countries have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips, in its Form 6-K filed with the SEC, stated the following:

> Last Friday, as part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission (KFTC) visited the offices of LG Philips LCD in Seoul Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices, in Tokyo, Japan and then United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp).

52. On December 11, 2006, the Reuters news agency reported the following:

> Samsung Electronics Co. Ltd. (005930.KS) is being investigated by fair trade watchdogs in South Korea, Japan and the United States, the second Korean flat screen maker named in a probe into possible price fixing, a news agency report said on Tuesday.
>
> The report, from South Korea's Yonhap news agency, follows a disclosure by LG Philips LCD Co. Ltd. (034220.KS) on Monday that it was the target of an investigation by the Korean Fair Trade Commission (KFTC), the Japanese Fair Trade Commission (JFTC) and had received a subpoena from the U.S. Department of Justice
> . . .
>
> Yonhap cited unnamed regulatory and industry sources in reporting local antitrust authorities were also looking into possible collusion by Samsung and LG Philips to fix the prices of LCD products and control their supply. . .
>
> Late on Monday, a KFTC spokesman said the probe was being conducted by the Cartel Investigation Group.

(http://business.scotsman.com/latest.cfm?id = 1843512006).

53. On December 12, 2006, other companies, including AU Optronics, Sharp, Sanyo Epson, indicated they were under investigation.

54. According to one report, "'[t]he subject of the probe is price fixing,' Akinori Yamada, a director of management and planning at Japan's Fair Trade Commission, said in Tokyo today. He said LG Philips and Samsung were being questioned, although he declined to name or give the number of the other companies being investigated. In Washington, U.S. Justice



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  Department spokeswoman Gina Talamona said "the agency 'is investigating the possibility of

2  anticompetitive practices' and is cooperating with foreign authorities."

3  (http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69cUPg&refer=asia).

4  Another report indicated that "Min Chun Hong, an analyst at Goodmorning Shinhan Securities,

5  said that if the companies [Samsung and LG Philips] were convicted, penalties could amount to

6  about 200 billion won, or $216 million, each."

7  (http://www.iht.com/articles/2006/12/12/business/flat.php).

8      55.    Michael Min, an analyst at Korea Investment and Securities, has been quoted as

9  saying that the investigation may be focused on a period over the last several years when

10  manufacturers of TFT-LCD Products were charging comparable prices.

11  (http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/AR2006121200260.html).

12      56.    There are also other indications that Defendants have engaged in collusive

13  activity. A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-demand

14  cycle for LCD displays. A recent article in Infoworld (available at

15  http://www.infoworld.com/article/06/06/13/79145_25OPreality_1.html cited Chris Connery, an

16  industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the talk in the industry is

17  that the manufacturers are looking to create an artificial Crystal Cycle. At a recent conference in

18  Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively

19  look at cutting back on production from 100 percent to at least 85 percent. Otherwise, if supply

20  outpaces demand, manufacturers will be forced to cut prices. . . . Will the mother-glass

21  manufacturers actually create this artificial shortage? 'The chatter is growing louder each day,'

22  Connery says." A subsequent *Infoworld* article

23  (http://www.infoworld.com/article/06/06/12/79223_HNphilipscuts1cd_1.html) noted that the

24  unnamed Taiwanese executive came from AU Optronics.

25

26

CLASS ACTION COMPLAINT - 16
Case No.

001942-11  147610 V1

HB
HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

1     57.    Similarly, Samsung's presentation described above noted that "it was possible to

2    secure a reasonable amount of profit while following the industry leaders" during the Class

3    Period.

4     58.    Defendants, through their officers, directors and employees, effectuated the

5    aforesaid contract, combination, trust or conspiracy between themselves and their co-

6    conspirators by, among other things:

7        a.    Participating in meetings and conversations, including through various

8    trade associations and committees, to discuss the prices of TFT-LCD Products in the United

9    States;

10        b    Agreeing, during those meetings and conversations, to charge prices at

11    specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the

12    United States;

13        c.    Issuing price announcements and quotations in accordance with the

14    agreements reached; and

15        d.    Selling TFT-LCD Products to various customers in the United States at

16    non-competitive prices.

17               **VII.   ACTIVE CONCEALMENT**

18     59.    Throughout and beyond the conspiracy, Defendants and their co-conspirators

19    affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their

20    co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of

21    their higher-level executives. Defendants and their co-conspirators publicly provided pretextual

22    and false justifications regarding their price increases, Defendants and their co-conspirators

23    conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts

24    in furtherance thereof, and actively concealed their activities through various other means and

25    methods to avoid detection. Plaintiff did not discover, and could not have discovered through

26

CLASS ACTION COMPLAINT - 17
Case No.

001942-11 147610 V1

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the

2   antitrust laws as alleged herein until shortly before this class action litigation was commenced.

3       60.     As a result of the active concealment of the conspiracy by Defendants and their

4   co-conspirators, any and all applicable statutes of limitations otherwise applicable to the

5   allegations herein have been tolled.

6                           **VIII.   VIOLATION ALLEGED**

7                               **CLAIM FOR RELIEF**

8                       **(Violation of Section 1 of the Sherman Act)**

9       61.     Plaintiff incorporates and realleges, as though fully set forth herein, each and

10   every allegation set forth in the preceding paragraphs of this Complaint.

11      62.     Beginning at a time presently unknown to Plaintiff, but at least as early as

12   January 1, 1998 and continuing through December 31, 2005, Defendants and their co-

13   conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of

14   trade to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Products in the

15   United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

16      63.     In formulating and carrying out the alleged agreement, understanding, and

17   conspiracy, the Defendants and their co-conspirators did those things that they combined and

18   conspired to do, including but not limited to, the acts, practices, and course of conduct set forth

19   above, and the following, among others:

20              a.      To fix, raise, maintain and stabilize the price of TFT-LCD Products;

21              b.      To allocate markets for TFT-LCD Products among themselves;

22              c.      To submit rigged bids for the award and performance of certain TFT-LCD

23   Products contracts;

24              d.      To allocate among themselves and collusively reduce the production of

25   TFT-LCD Products;

26

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    e.    The combination and conspiracy alleged herein has had the following

2    effects, among others;

3    f.    Price competition in the sale of TFT-LCD Products has been restrained,

4    suppressed, and/or eliminated in the United States;

5    g.    Prices for TFT-LCD Products sold by Defendants and their coconspirators

6    have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels

7    throughout the United States; and

8    h.    Those who purchased TFT-LCD Products directly or indirectly from

9    Defendants and their co-conspirators have been deprived of the benefits of free and open

10    competition.

11    64.    Plaintiff has been injured and will continue to be injured in its business and

12    property by paying more for TFT-LCD Products purchased directly from the Defendants and

13    their co-conspirators than he would have paid and will pay in the absence of the combination and

14    conspiracy, including paying more for personal computers and other products in which

15    TFT-LCD Products is a component as a result of higher prices paid for TFT-LCD Products by

16    the manufacturers of those products.

17    65.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing

18    and restraining the violations alleged herein.  Plaintiff and the Class are also entitled to damages

19    and treble damages.

20    ## IX.    PRAYER FOR RELIEF

21    WHEREFORE, Plaintiff prays:

22    1.    That the Court determine that the Sherman Act claim alleged herein may be

23    maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

24    Procedure;

25    2.    That the unlawful conduct, contract, conspiracy or combination alleged herein be

26    adjudged and decreed to be:

CLASS ACTION COMPLAINT - 19
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1          a.     A restraint of trade or commerce in violation of Section 1 of the Sherman

2     Act.

3          3.     That Plaintiff and the Class recover damages, as provided by federal antitrust

4     laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against

5     the Defendants in an amount to be trebled in accordance with such laws;

6          4.     That Defendants, their affiliates, successors, transferees, assignees, and the

7     officers, directors, partners, agents, and employees thereof, and all other persons acting or

8     claiming to act on their behalf, be permanently enjoined and restrained from in any manner:

9     (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination

10    alleged herein, or from entering into any other conspiracy alleged herein, or from entering into

11    any other contract, conspiracy or combination having a similar purpose or effect, and from

12    adopting or following any practice, plan, program; or device having a similar purpose or effect;

13    and (2) communicating or causing to be communicated to any other person engaged in the sale of

14    TFT-LCD Products, information concerning bids of competitors;

15         5.     That Plaintiff and members of the Class be awarded pre- and post-judgment

16    interest, and that that interest be awarded at the highest legal rate from and after the date of

17    service of the initial complaint in this action;

18         6.     That Plaintiff and members of the Class recover their costs of this suit, including

19    reasonable attorneys' fees as provided by law; and

20         7.     That Plaintiff and members of the Class have such other, further, and different

21    relief as the case may require and the Court may deem just and proper under the circumstances.

22

23

24

25

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623 0594

DATED: January 9, 2007.

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____
   Steve W. Berman, WSBA No. 12536
   Anthony D. Shapiro, WSBA No. 12824
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Gregory L. Russell
Michael T. Callan
Peterson Russell Kelly PLLC
1850 Skyline Tower
10900 NE Fourth St.
Bellevue, WA 98004-8341
Telephone: (425) 462-4700
Facsimile: (425) 451-0714

Attorneys for Plaintiff

CLASS ACTION COMPLAINT - 21
Case No.

001942-11  147610 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594